UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIMUS GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INSTITUTE FOR ENVIRONMENTAL HEALTH, INC., <br><br> Defendant. | Case No. 18-cv-00005-WHO <br><br> **CLAIM CONSTRUCTION ORDER** <br> Re: Dkt. No. 40 |

## INTRODUCTION

Primus Group, Inc. ("Primus") and Institute for Environmental Health, Inc. ("IEH") ask me to construe a single term from the two patents asserted in this case: IEH's '143 Patent (Patent Number 8,882,143, issued September 2, 2014) is titled "Modular Compositing-Multiple Lot Screening Protocols for Detection of Pathogens, Microbial Contaminants and/or Constituents;" its '771 Patent (Patent Number 9,637,771, issued May 2, 2017) is titled "Modular Compositing-Multiple Lot Screening Protocols for Detection of Pathogens, Microbial Contaminants and/or Constituents." The patents in suit both describe a method for testing of multiple lots of a product for microbiological contamination. For the reasons stated below, I adopt IEH's proposed construction.

## LEGAL STANDARD

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in

evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point [ ] is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Claims speak to those skilled in the art," but "[w]hen the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) (citations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "However, claims are not to be interpreted by adding limitations appearing only in the specification." *Id.* "Thus, although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Id.* "[T]he description may act as a sort of dictionary, which explains the invention and may define terms used in the claims," and the "patentee is free to be his own lexicographer," but "any special definition given to a word must be clearly defined in the specification." *Markman*, 517 U.S. at 989–90.

2

On the other hand, it is a fundamental rule that "claims must be construed so as to be consistent with the specification." *Phillips*, 415 F.3d at 1316. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Finally, the Court may consider the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. The prosecution history may "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582–83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.") (internal quotations omitted).

In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *Vitronics*, 90 F.3d at 1583. However, "it is entirely appropriate . . . for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. All extrinsic evidence should be evaluated in light of the intrinsic evidence, *Phillips*, 415 F.3d at 1319, and courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from examination of the claims, the written description, and the prosecution history, *Pitney Bowes*, 182 F.3d at 1308 (citing *Vitronics*, 90 F.3d at 1583). While extrinsic evidence may guide the meaning of a claim term, such evidence is less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1318–19.

## DISCUSSION

The asserted patents describe a method for testing products for microbial contamination.

3

The method involves taking samples of test lots and combining a portion of those samples with other lots to create a separate composited lot sample. Then portions of multiple separate composited lot samples are combined to form a pooled modular composite sample which is then tested for the target microorganism. If the pooled modular composite sample tests positive for the target microorganism (i.e., is contaminated), the separate composited lot samples are tested to narrow down which test lots contain the microorganism. The disputed claim term relates to the initial collection of product from the test lot that will later be used to make up the composited lot sample and, ultimately, the pooled modular composite sample.

As an initial matter, the parties agree to the following constructions, with respect to terms used in the '143 and '771 patents:

To "validate" means to "determine that a particular sample tests negative using the detection assay." Opening Claim Construction Brief at 4-5 [Dkt. No. 40];

"Enriching" means "incubating a sample under conditions suitable to allow levels of a target agent/organism that is present to reach detectable levels and become uniform or substantially uniform." *Id.;* and

A "selective agent" means an "agent that inhibits competing non-target microbe(s)." *Id.*

## I. THE DISPUTED CLAIM TERM

The parties ask me to construe the following claim term:

| CLAIM TERM | IEH'S PROPOSED CONSTRUCTION | PRIMUS'S PROPOSED CONSTRUCTION[1] |
|---|---|---|
| Separately collecting multiple independent samples from each of the multiple separate lots | Collecting multiple samples from different, non-contiguous locations from each of multiple separate lots | Collecting multiple portions from each of multiple lots |

Primus argues that the claim language does not support collecting samples from non-contiguous locations, as it runs contrary to the ordinary meaning of the words "separately," "independent," or "samples." Primus's Responsive Claims Construction Brief at 6 [Dkt. No. 43].

---

[1] In Primus's responsive claims construction brief, it contends that "sample" and "portion" are interchangeable and their proposed construction could also be "Collecting multiple samples from each of multiple lots". Resp. at 12 n.5.

4

1    It contends that, when read in conjunction with the second portion of the claim term ("wherein
2    each separate test lot is separately sampled by taking said multiple independent samples thereof"),
3    "separately" contemplates separate acts of collection from separate test lots, not separate samples
4    from separate lots. *Id.* at 6-7. It also asserts that independent does not mean "from non-
5    contiguous locations," that spatial non-contiguity is not an inherent characteristic of samples, and
6    that sampling from non-contiguous locations has nothing to do with the purpose of the claimed
7    invention. *Id.* at 7-10.

8    I disagree. The words of a claim "are generally given their ordinary and customary
9    meaning" that "the term would have to a person of ordinary skill in the art in question at the time
10   of the invention . . . ." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (internal
11   citations omitted). "The person of ordinary skill in the art is deemed to read the claim term not
12   only in the context of the particular claim in which the disputed term appears, but in the context of
13   the entire patent, including the specification." *Id.* (internal citation omitted). In the context of the
14   asserted patents, a "sample" can only be understood to have a probative purpose because the entire
15   point of the asserted patents is to test for contamination. If, as Primus argues, unrepresentative
16   samples could be used, then any results reached under the asserted patents, either in the separate
17   composited lot samples or the pooled modular composite sample, would have limited probative
18   value. The use of unrepresentative samples would be commercially useless because results based
19   on unrepresentative samples have little predictive power to identify the presence of microorganism
20   contaminants.

21   Primus's argument that "independent" does not mean "from non-contiguous locations" is
22   similarly flawed. Resp. at 7-8. In order to have a representative sample of a given test lot, the
23   portions of the product that constitute the sample must be taken from non-contiguous locations to
24   be effective. Primus contends that fluids or liquids are homogenous and as a result, there is no
25   reason to take non-contiguous samples. This is also nonsensical--a volume of fluid or air is not
26   necessarily homogenous. The air near a wildfire is not the same as the air a mile away. The water
27   in a lake is not homogenous when on one bank there sits an oil refinery and on the other a petting
28   zoo.

IEH's construction clarifies the claim term. I construe the claim term as "Collecting multiple samples from different, non-contiguous locations from each of multiple separate lots." I recognize the "fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims[,]" but this construction is the only way "to capture the scope of the actual invention, rather than . . . allow the claim language to become divorced from what the specification conveys is the invention." *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-CV-02787-WHO, 2017 WL 7058419, at *8 (N.D. Cal. Aug. 31, 2017) (citing *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

## CONCLUSION

The claim term is construed as follows: "Separately collecting multiple independent samples from each of the multiple separate lots" means "Collecting multiple samples from different, non-contiguous locations from each of multiple separate lots".

**IT IS SO ORDERED.**

Dated: January 22, 2019

William H. Orrick
United States District Judge